Filed 12/22/21  Lee v. K.B.R., Inc. CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| FREIDA LEE,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>K.B.R., INC., et al.,<br><br>     Defendant and Respondent. | A159980<br><br>(Alameda County Super. Ct.<br>  No. RG12660482) |

       This appeal arises out of a long running dispute between Freida Lee and K.B.R., Inc. (KBR) based on a credit report indicating that KBR reported Lee's same debt twice and failed to mark the debt as disputed.  Lee first filed an individual action asserting two claims.  After the trial court denied Lee's motion for leave to amend and granted KBR's motion for summary adjudication on one claim, Lee voluntarily dismissed the other claim and appealed the trial court's rulings.

       The same day of the voluntary dismissal, Lee filed a class action against KBR asserting six claims.  The trial court sustained KBR's demurrer without leave to amend as to the first four claims, and KBR filed a motion for judgment on the pleadings (MJOP) seeking to abate the two remaining claims while the appeal in the individual action was pending because both

1

actions involved the same "primary rights." The trial court granted the MJOP and subsequently dismissed all claims against KBR.

On appeal, Lee challenges the trial court's rulings on demurrer and MJOP, as well as the dismissal order itself. While we conclude the trial court did not err in sustaining the demurrer in part or granting the MJOP, we agree that the entry of the dismissal order was in error as to Lee's remaining two claims and reverse on that basis. These claims were properly abated while the appeal of the first action was pending. Once that appeal had been resolved, however, the primary rights doctrine afforded no basis to dismiss Lee's remaining two claims in the second action.

## BACKGROUND

## I.

### *Prior Individual Action*

In January 2012, Lee filed a complaint against Professional Recovery Systems, Inc. (PRS), Rash Curtis (RC), and Doe defendants. Lee alleged she had received a credit report indicating that PRS and RC had negatively reported the same debt twice. Lee also alleged she had notified defendants in January 2011 that she was disputing the debt, but thereafter PRS failed to note the dispute on her credit report. The complaint asserted two causes of action based on defendants' actions: (1) violation of section 1788.17 of the Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788.1 et seq.)[1] (RFDCPA); and (2) violation of section 1785.25, subdivision (a) (section 1785.25(a)) of the Consumer Credit Reporting Agencies Act (§ 1785.1 et seq.) (CCRAA). The complaint sought damages, attorney fees, declaratory relief, and injunctive relief "prohibiting defendants from engaging in such

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

2

conduct in the future." Despite the complaint's caption identifying Lee as the plaintiff "on behalf of herself and others similarly situated" and her counsel as "FOR PLAINTIFF AND THE CLASS," it contained no class allegations and sought relief only on behalf of Lee.

Lee subsequently inserted KBR for one of the Doe defendants. Discovery closed, and trial was set for July 2014. In March 2014, defendants filed a motion for summary judgment or, in the alternative, summary adjudication. In support of their motion, defendants filed a declaration stating that PRS and RC were registered fictitious business names of KBR used to conduct debt collection, and that the double reporting on Lee's credit report from Equifax resulted unintentionally from an error that occurred when a KBR employee attempted to update the subscriber codes used with credit reporting agencies after KBR purchased the assets and name of PRS and took over the handling of its accounts.

Shortly after the filing of defendants' motion, Lee moved for leave to amend her complaint to add class allegations and new causes of action. The trial court denied the motion based on the prejudice to KBR, as well as Lee's failure to sufficiently explain her delay in seeking amendment until after the close of discovery, while defendants' motion was pending, and shortly before the trial (already continued twice) was scheduled to take place.

In May 2014, the trial court granted summary adjudication in favor of KBR as to the RFDCPA claim and dismissed it on the ground that it was preempted by federal law (15 U.S.C. § 1681t(b)(1)(F)). The court denied summary adjudication as to the CCRAA claim. In June 2014, Lee requested dismissal of the complaint without prejudice. After the dismissal was entered, Lee appealed the trial court's rulings denying her motion for leave to amend the complaint and granting summary adjudication on her RFDCPA

3

claim.  This court affirmed, concluding that the trial court did not abuse its discretion in denying leave to amend the complaint and that the RFDCPA claim was preempted by federal law.  (*Lee v. Professional Recovery Systems, Inc.* (Feb. 22, 2018, A142730) [nonpub. opn.].)  It also concluded that Lee did not appear to have proven her RFDCPA claim because section 1788.17 applies only to a "debt collector collecting or attempting to collect a consumer debt." (*Lee, supra,* A142730.)  Lee had neither alleged nor argued that defendants were engaged in debt collection activities or efforts during the time period relevant to her claims (from January 2011 going forward), but instead relied solely on their acts of credit reporting as "furnishers of information." (*Ibid.*)  This court explained there was "no reason to apply debt collection proscriptions to credit reporting merely because the reporting is being done by a debt collection agency." (*Ibid.*)

## II.

### *Current Class Action*

In June 2014, on the same day the individual action was dismissed, Lee filed a class action against KBR.  In July 2014, Lee moved to consolidate this class action with a pending consolidated class action she had previously filed against Equifax Information Solutions, LLC based on the same credit reporting for which she had sued KBR.  In August 2014, the motion was granted for all purposes except trial.  Lee then filed a first amended class action complaint, alleging KBR had reported the same debt twice and failed to note Lee's dispute of the debt on her credit report.  The complaint asserted six causes of action.  The first three causes of action alleged KBR violated section 1785.25(a) of the CCRAA because it had "furnished information incompletely and/or inaccurately" to credit reporting agencies by (1) "suggesting that Rash Curtis had a right or ability to credit report

4

accounts of which it had no ownership or other right as to herself and a similarly situated class," (2) "reporting the same debt in a duplicate fashion in the name of both Rash Curtis and PRS," and (3) "reporting the debt in issue without noting plaintiff's dispute." For each of these causes of action, Lee alleged she "did not learn of the routine and systematic nature of these acts until February of 2014."

The fourth cause of action alleged KBR violated the Consumer Legal Remedies Act (§ 1750 et seq.) (CLRA) "by and through its furnishing of information to credit reporting agencies." The fifth cause of action alleged KBR violated the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) (UCL) because its actions were unlawful, fraudulent, and unfair. Through this UCL cause of action, Lee sought injunctive relief "necessary to prevent the use or employment by [KBR] of the practices alleged herein." Lee also asserted a sixth cause of action for declaratory relief to determine whether KBR "may permissibly furnish credit reporting agencies information in the name of entities who have no ownership or other right to report such accounts" and "duplicate report the same account and/or fail to notify credit reporting agencies of consumer disputes."

KBR then filed a demurrer to the complaint. In October 2014, the trial court sustained the demurrer without leave to amend as to the three CCRAA causes of action because they were barred by the two-year statute of limitations applicable to CCRAA claims. The trial court rejected Lee's argument that the "delayed discovery doctrine" applied to her class action claims as she did not learn of the "routine and systematic nature" of the alleged violations until KBR moved for summary adjudication in her individual action. The trial court explained: "Plaintiff's argument demonstrates a misunderstanding of basic class action law, i.e. that a

5

plaintiff must first have viable individual causes of action before she can pursue those causes of action on behalf of a class. Because no class has been certified, at this point Plaintiff's claims remain individual." The trial court also sustained the demurrer without leave to amend as to the CLRA cause of action, finding the CLRA inapplicable because KBR asserted it did not deal in either goods or services, and Lee "offered no authority for the proposition that a consumer may seek relief under the CLRA from a person or entity who provided services to a third party." The trial court, however, overruled the demurrers as to the UCL and declaratory relief causes of action.

In April 2015, KBR filed its MJOP as to these remaining UCL and declaratory relief causes of action. The trial court granted the motion, concluding that Lee had violated the primary rights doctrine—a plaintiff may bring only one action for a defendant's violation of a primary right—by bringing the consolidated class action while her individual action was still pending on appeal. The trial court found that both actions invoked the same primary rights: "the right to be free from credit reporting the same account twice and the right to have a debt marked as disputed."

In June 2015, the trial court entered a judgment of dismissal in favor of KBR. Lee then moved to vacate the judgment, arguing that the MJOP order had only *abated* the consolidated class action while the appeal was still pending in the individual action. The trial court granted the motion, vacated the June 2015 judgment, and stayed the consolidated class action until resolution of the appeal.

In August 2018, after the appeal in the individual action had been resolved, KBR moved to lift the stay of the consolidated class action and enter judgment in its favor. In November 2018, the trial court lifted the stay but denied entry of judgment, based on its determination that there were no prior

6

orders dismissing the UCL or declaratory relief causes of action. KBR filed a writ petition in this court challenging the denial, and this court issued an alternative writ of mandate directing the trial court either to set aside and vacate its order denying KBR's motion for entry of judgment and grant the motion, or to show cause as to why a peremptory writ of mandate should not issue. In February 2020, the trial court vacated the portion of its order denying KBR's motion for entry of judgment and granted the motion. It dismissed all claims against KBR. Lee then filed her notice of appeal from the February 2020 order of dismissal.

## DISCUSSION

## I.

### *Jurisdiction*

Before turning to the merits of the appeal, we first address KBR's argument that we lack jurisdiction to decide it because the appeal is untimely. Specifically, KBR suggests that Lee's appeal from the February 2020 dismissal order is insufficient to challenge the demurrer and MJOP rulings because she did not appeal those prior orders. Not so. An order sustaining a demurrer without leave to amend is not appealable; an appeal lies only from the subsequently entered judgment. (*Vibert v. Berger* (1966) 64 Cal.2d 65, 67.) An order granting MJOP is similarly not appealable, and any appeal must be taken from the subsequent judgment. (*Little v. Mountain View Dairies* (1950) 35 Cal.2d 232, 234.)

While notice of entry of the original judgment of dismissal was filed on June 15, 2015, that judgment was vacated on August 3, 2015, before the applicable 60-day deadline to appeal had expired. (Cal. Rules of Court, rule 8.104, subd. (a)(1)(B).) The trial court subsequently entered the February 2020 dismissal order, which is an appealable judgment. (Code Civ.

7

Proc., §§ 581d, 904.1, subd. (a)(1).)  Lee filed her notice of appeal on March 16, 2020, well within any deadline to appeal the order.  (Cal. Rules of Court, rule 8.104, subd. (a)(1).)

## II.

### *Standard of Review*

The standard of review governing an order sustaining a demurrer without leave to amend is "long-settled."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  "On appeal, we review the trial court's sustaining of a demurrer without leave to amend de novo, exercising our independent judgment as to whether a cause of action has been stated as a matter of law and applying the abuse of discretion standard in reviewing the trial court's denial of leave to amend."  (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1469.)  As Lee challenges the rulings on demurrer that her CCRAA and CLRA claims fail as a matter of law, our review is de novo.  Lee bears the burden of proving the trial court erred in sustaining the demurrer on these claims.  (*McKell,* at p. 1469.)  Moreover, we "must affirm if the trial court's decision to sustain the demurrer was correct on any theory."  (*Kennedy v. Baxter Healthcare Corp.* (1996) 43 Cal.App.4th 799, 808.)  In other words, "we do not review the validity of the trial court's reasoning but only the propriety of the ruling itself."  (*Orange Unified School Dist. v. Rancho Santiago Community College Dist.* (1997) 54 Cal.App.4th 750, 757.)

As an MJOP is equivalent to a demurrer, the same de novo standard of review applies to an appeal from the granting of an MJOP.  (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 166.)

8

# III.

## *Demurrer*

Lee argues that the trial court erred in sustaining the demurrer on both her CCRAA and CLRA causes of action. As to her CCRAA claims, Lee contends the ruling was in error for two reasons. Neither is persuasive.

First, Lee argues that the "delayed discovery" rule applied to these claims and thus they were not barred by the statute of limitations. Section 1785.33 of the CCRAA provides, in relevant part, that "[a]n action to enforce any liability created under this chapter may be brought in any appropriate court of competent jurisdiction within two years from the date the plaintiff knew of, or should have known of, the violation of this title . . . ." Lee filed her individual action in January 2012 and thus knew of her CCRAA claims since at least that time. Indeed, she concedes that she was "clearly aware of her own claims against KBR." Her consolidated class action was filed in June 2014, more than two years after the filing of her individual action.

The delayed discovery rule, however, "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807 (*Fox*).) Lee argues that this rule applies here because she was not aware of her class action claims until defendants filed their summary adjudication motion in the individual action in March 2014. She contends: "It was only KBR's revelation in its summary judgment motion that allowed her to know that the practices alleged did not just apply to her, but to perhaps as many as 100,000 California consumers."

We conclude that the delayed discovery rule is inapplicable here because Lee does not have "other's claims" that can be asserted

9

independently from her own time-barred individual claim. "A representative plaintiff still possesses only a single claim for relief—the plaintiff's own. That the plaintiff has undertaken to also sue 'for the benefit of all' does not mean that the plaintiff has somehow obtained a 'class claim' for relief that can be asserted independent of the plaintiff's own claim." (*Watkins v. Wachovia Corp.* (2009) 172 Cal.App.4th 1576, 1589.)

Moreover, even if Lee was not time-barred by her individual action, she has not satisfied the requirements of the delayed discovery rule. To rely on the rule, a plaintiff " 'must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.' " (*Fox, supra*, 35 Cal.4th at p. 808.) "In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to 'show diligence'; 'conclusory allegations will not withstand demurrer.' " (*Ibid*.) Here, in both her opposition to the demurrer and on appeal, Lee makes only conclusory allegations that (despite the caption on her initial complaint stating she was suing "on behalf of herself and others similarly situated") she belatedly discovered the class-wide nature of her claims. She has not specifically pleaded *any* facts regarding *either* her inability to have made that discovery in the first two years of her individual action *or* her reasonable diligence in attempting to do so.

Second, Lee argues that equitable tolling should have been applied to otherwise extend the statute of limitations on these CCRAA claims. Lee never raised this argument in the trial court, and thus we deem the argument forfeited. (*Daneshmand v. City of San Juan Capistrano* (2021) 60 Cal.App.5th 923, 936.) Even if not forfeited, however, we would reject the argument. "The equitable tolling of statutes of limitations is a judicially created, nonstatutory doctrine." (*McDonald v. Antelope Valley Community*

*College Dist.* (2008) 45 Cal.4th 88, 99.) The doctrine is a narrow remedy applied when " ' "an injured person has several legal remedies and, reasonably and in good faith, pursues one," ' " but it later becomes necessary to pursue another. (*Ibid.*; see also *Saint Francis Mem. Hosp. v. State Dept. of Pub. Health* (2020) 9 Cal.5th 710, 724.) But this doctrine does not apply. Lee is not seeking to assert a different legal remedy on her own behalf. Rather, she is seeking to assert a class claim where her individual claim is time barred. Lee argues that the statute of limitations for her consolidated class action should be tolled from the filing of her individual action because she "put KBR on notice of her claim and its nature and it was KBR that subsequently and unilaterally divulged the systematic and widespread nature of the failures at issues." Equitable tolling, however, has been explicitly rejected when a plaintiff voluntary dismisses his or her first action. (*Wood v. Elling Corp.* (1977) 20 Cal.3d 353, 359; *Thomas v. Gilliland* (2002) 95 Cal.App.4th 427, 433.) In short, Lee's voluntary dismissal of her individual action precludes application of equitable tolling to her consolidated putative class action.

As to her CLRA claim, Lee argues that the trial court erred in concluding that the statute did not apply to KBR. The CLRA provides a non-exclusive statutory remedy for "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." (§ 1770, subd. (a); *Gallin v. Superior Court* (1991) 230 Cal.App.3d 541, 545–546.) It defines "[t]ransaction" as "an agreement between a consumer and another person" (§ 1761, subd. (e)); "[g]oods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes" (*id.*, subd. (a)); and "[s]ervices" as "work, labor, and services for other than a commercial or

11

business use, including services furnished in connection with the sale or repair of goods" (*id.*, subd. (b)).  Lee does not contend that KBR directly transacted with her, or that KBR provided her with a "good" or "service" as defined by the CLRA.  Instead, without any supporting authority, she claims that KBR is subject to the CLRA because she (Lee) transacted with the East Bay Municipal Utility District (EBMUD) for a service, incurred a debt to EBMUD, and KBR subsequently acted "in furtherance of that transaction in attempting to collect on it" as either a "successor owner" or "agent" of EBMUD.

As a preliminary matter, the argument is not supported by the allegations in Lee's complaint:  it does not allege that KBR was engaged in any debt collection activities or efforts but instead alleges KBR furnished inaccurate or incomplete information to third-party credit reporting agencies. Moreover, we are not persuaded that such actions fall within the scope of the CLRA.  While we agree that the CLRA must be "liberally construed and applied" to protect against unfair and deceptive practices, the plain language of the statute explicitly limits its purview to actions undertaken "in a transaction intended to result or that results in the sale or lease of goods or services to any consumer."  (§§ 1760, 1770, subd. (a).)  Courts have rejected similar attempts to seek CLRA coverage by relying on actions that are ancillary to the "goods" or "services" provided in a particular transaction.  In *Fairbanks v. Superior Court* (2009) 46 Cal.4th 56, for example, the plaintiffs argued that life insurance policies were not "services" as defined by the CLRA, but that services related to those policies—including the use of agents or employees to assist customers or process claims—fell within the reach of the statute.  (*Fairbanks,* at p. 65.)  The California Supreme Court disagreed, concluding that virtually all intangible goods were connected to ancillary

12

services and that such services could not be used to bring the life insurance policies within the scope of the CLRA. (*Fairbanks,* at p. 65.) In *Alborzian v. JPMorgan Chase Bank, N.A.* (2015) 235 Cal.App.4th 29, the plaintiffs asserted a CLRA claim based on the defendants' collection letters and calls after plaintiffs had defaulted on their mortgage loan. (*Alborzian,* at pp. 33–34.) The appellate court concluded that such ancillary services did not convert mortgage loans into "goods" or "services" under the CLRA. (*Alborzian,* at p. 40.) The same reasoning applies here with even greater force: KBR's credit reporting to third-party agencies is far removed from the transaction between EBMUD and Lee that resulted in EBMUD's provision of utility services and accordingly does not fall within the specific proscriptions of the CLRA.

In sum, we conclude that the trial court did not err in sustaining the demurrer on the CCRAA and CLRA causes of action.

## IV.

### *MJOP*

Lee argues next that the trial court erred in granting the MJOP on her UCL and declaratory relief causes of action. She contends there are three reasons that the ruling was in error. Again, we disagree.

First, Lee argues that the MJOP should have been denied because KBR's invocation of the primary rights doctrine was untimely. This argument was never raised in the trial court, and thus it is forfeited. (*Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1261–1262.) Even if not forfeited, however, we would reject the argument. A defendant can invoke the primary rights doctrine "by either of two means: (1) if the first suit is still pending when the second is filed, the defendant in the second suit may plead that fact in abatement [citations]; or (2) if the first suit has terminated in a judgment

13

on the merits adverse to the plaintiff, the defendant in the second suit may set up that judgment as a bar under the principles of res judicata [citation]." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 682.) KBR proceeded here under the first method, seeking abatement of Lee's class action while her individual action was still pending.

"The proper time to raise a plea in abatement is in the original answer or by demurrer at the time of the answer." (*Vitug v. Griffin* (1989) 214 Cal.App.3d 488, 493–494.) "It is a technical objection and must be pleaded specifically. Thus an affirmative defense or demurrer which contains a general assertion that plaintiff has not stated a cause of action does not suffice to raise a plea in abatement." (*Id.* at p. 494.) A trial court, however, has the discretion to permit the defense to be made later. (*Kelley v. Upshaw* (1952) 39 Cal.2d 179, 188–189.) Courts have allowed defendants to seek abatement in advance of trial or judgment in the action, including on a motion that attacks the pleadings. (See *Virgin v. State Farm Fire & Casualty Co.* (1990) 218 Cal.App.3d 1372, 1376, n. 5.) We see no basis to conclude that the trial court abused its discretion in considering KBR's request for abatement in its MJOP.

Second, Lee argues that this court's decision on the appeal from the individual action is either "law of the case," or "clearly shows" the two actions involved different primary rights. We are not persuaded. "The doctrine of the law of the case provides that ' " 'the decision of the case[ ] conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent trial or appeal *in the same case*.' " ' " (*Joyce v. Simi Valley Unified School Dist.* (2003) 110 Cal.App.4th 292, 304, italics added.) This court's decision in the prior individual action—a different case from the current class action—is not law of the case here. (*Ibid.*) Nor does the

14

decision "clearly show[]" the two actions involved different primary rights. This court simply determined that Lee had not proven her RFDCPA claim because she never alleged that KBR was engaged in debt collection activities efforts, and thus the statute did not apply. (*Lee v. Professional Recovery Systems, Inc.*, *supra,* A142730.) Lee argues that this determination somehow "shows" there are primary rights under debt collection statutes that are separate from primary rights under the credit reporting statutes.

This argument, however, fundamentally misunderstands the primary rights doctrine and its attendant analysis. The primary rights doctrine provides that a litigant may bring only one action—termed a "single cause of action"—for the invasion of his or her primary right. (*Slater v. Blackwood* (1975) 15 Cal.3d 791, 795.) The "cause of action," for this purpose, is defined by the harm suffered, regardless of the particular remedy sought or legal theory advanced by the litigant. (*Ibid.*) "Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief." (*Ibid.*) Accordingly, we are not persuaded by Lee's attempt to draw a distinction between the remedies she sought in each action: namely, for violation of the debt collection and credit reporting statutes. This is particularly true given that here, there is no meaningful distinction to be made. Lee appears to argue that her individual action (including the RFDCPA claim) invoked a primary right related to debt collection, whereas her class action (including the CCRAA claims) invoked a primary right related to credit reporting. But Lee asserted both RFDCPA *and* CCRAA claims in the individual action. Lee's voluntarily dismissal of the CCRAA claim in her individual action does not mean that claim was not or could not have been asserted in that action. (*Wulfjen v. Dolton* (1944) 24 Cal.2d 891, 896 ["The theory of relief urged in the *present action* against

15

said defendants was open to plaintiff within the legitimate scope of her pleading in the *prior action*"].)  Indeed, prior to her voluntary dismissal, she did assert the CCRAA claim in her individual action.

In any event, we turn to the "determinative factor" in our primary rights analysis:  the harm suffered.  (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 798.)  "When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right."  (*Ibid.*)  Lee's individual and class actions sought compensation for the same alleged harm:  KBR's furnishing of inaccurate or incomplete information that resulted in the double reporting of debt and failure to mark the debt as disputed.

The authority cited by Lee for her contrary position is distinguishable because it involves litigants who, unlike Lee, have not run afoul of the primary rights doctrine because they asserted two different harms in the two causes of actions.  In *Grisham v. Philip Morris U.S.A., Inc.* (2007) 40 Cal.4th 623, for example, one of the plaintiffs alleged that her addiction to cigarettes caused emphysema, as well as other painful and disfiguring oral problems.  (*Id.* at p. 630.)  She also alleged that the defendants had been unjustly enriched by her ongoing and continuing purchases of cigarettes.  (*Id.* at p. 631.)  The California Supreme Court concluded that the plaintiff had alleged "two different types of injury, one serious physical injury or injuries, the other an economic injury, giving rise to two different causes of action." (*Id.* at p. 643.)  Unlike *Grisham*, Lee's individual and class actions both invoked the same harm and thus the same primary right:  the right to be free from inaccurate or incomplete credit reporting.

Third, Lee argues that her class action should be permitted to proceed because her CLRA and UCL claims involve a separate primary right:  the

16

right to seek injunctive relief on behalf of the public. As to the CLRA claim, we reject the argument because the trial court previously sustained KBR's demurrer on that claim without leave to amend on other grounds, which ruling we have affirmed earlier in this opinion. As to the UCL claim, Lee cites *Zakaryan v. The Men's Wearhouse* (2019) 33 Cal.App.5th 659 for the proposition that a UCL claim can involve two primary rights: (1) the individual plaintiff's right to be made whole (through damages or restitution); and (2) the public's right to be protected from deceptive or wrongful practices through an injunction. What this argument overlooks, however, is that Lee sought both damages and injunctive relief in her individual action. Specifically, in both her RFDCPA and CCRAA claims, Lee requested "injunctive relief prohibiting defendants from engaging in such conduct in the future." Like the UCL, the RFDCPA and CCRAA were enacted for protection of the public. (See § 1785.1, subd. (e) ["The Legislature hereby intends to regulate consumer credit reporting agencies pursuant to this title in a manner which will best protect the interests of the people of the State of California"]; *Davidson v. Seterus, Inc.* (2018) 21 Cal.App.5th 283, 289.) Accordingly, we see no basis to conclude that the UCL claim Lee asserted in the class action invoked any primary right that was separate from any primary rights invoked in the individual action.

In sum, we conclude that the trial court did not err in granting the MJOP on the UCL and declaratory relief causes of action.

## V.

### *Dismissal Order*

Finally, Lee argues that the trial court erred in entering the February 2020 dismissal order because there was no basis to dismiss the UCL and declaratory relief claims. We agree.

17

As described above, the primary rights doctrine can be invoked by either (1) a plea of abatement or (2) an argument that the res judicata effect of the judgment in the first action bars the subsequent action. (*Crowley v. Katleman, supra*, 8 Cal.4th at p. 682.) Where, as here, the defendant asserts a plea of abatement, "the appropriate remedy is the entry of an interlocutory judgment postponing trial, rather than dismissal of the action." (*Boyd v. Freeman* (2017) 18 Cal.App.5th 847, 858, fn. 6.)

Then, if a judgment upon the merits is rendered in the first action, the defendant who asserted the plea in abatement can argue the res judicata effect of the judgment of the first action. (*Lord v. Garland* (1946) 27 Cal.2d 840, 851.) In other words, the party who invokes the primary rights doctrine under the first method (abatement) must turn to the second method (res judicata) to dismiss the subsequent action. (*Ibid.*) If, however, "the prior litigation is not determined upon the merits, the trial court should hear and decide the rights of the parties in accordance with the issues presented by the pleadings in the second action." (*Ibid.*)

Here, Lee's individual action was not determined on the merits because she voluntarily dismissed the action without prejudice. For the purposes of res judicata, a dismissal without prejudice is not a final judgment on the merits. (*Shuffer v. Board of Trustees* (1977) 67 Cal.App.3d 208, 216.) Accordingly, the UCL and declaratory relief claims could not be dismissed under the primary rights doctrine. We see no other basis for dismissal of these two claims. While the trial court noted that Lee could only assert claims against KBR as a furnisher of information following this court's decision in *Lee v. Professional Recovery Systems, Inc.*, *supra,* A142730, the UCL and declaratory relief claims are based on that alleged conduct. The trial court in Lee's initial action did not resolve the CCCRA claim on the

18

merits, and Lee's voluntary dismissal of the complaint in that case did not operate as res judicata to bar Lee's assertion of claims based on the same primary rights.  Abatement, rather than dismissal, was thus the proper remedy with respect to the UCL and declaratory relief  causes of action.

## DISPOSITION

The February 21, 2020 order of dismissal is reversed as to the UCL and declaratory relief causes of action and the case is remanded to the trial court for further proceedings to address those claims.  The order is otherwise affirmed.

_____

STEWART, J.

We concur.

_____

RICHMAN, Acting P.J.

_____

KLINE, J.*

_Lee v. K.B.R., Inc._ (A159980)

&ast; Assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.